**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kenneth A. WILD, Defendant–
Appellant (Two Cases).**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tyrone E. GREENFIELD,
Defendant–Appellant.**

**Nos. 93–5630, 93–5778 and 93–5790.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1994.

Decided March 2, 1995.

**ARGUED:** Thomas Abbenante, Washington, DC; David Benjamin Smith, Jacobovitz, English & Smith, Alexandria, VA, for appellants. Robert C. Erickson, Jr., Asst. U.S. Atty., Office of the U.S. Atty., Alexandria, VA, for appellee. **ON BRIEF:** Justin M. Miller, Jacobovitz, English & Smith, Alexandria, VA, for appellant Wild. Helen F. Fahey, U.S. Atty., Office of the U.S. Atty., Alexandria, VA, for appellee.

Before WILKINS, HAMILTON, and LUTTIG, Circuit Judges.

Affirmed in part, vacated in part and remanded for further proceedings by published opinion. Judge HAMILTON wrote the opinion, in which Judge WILKINS and Judge LUTTIG joined.

## OPINION

HAMILTON, Circuit Judge:

In this consolidated appeal, the appellants, Tyrone Greenfield (Greenfield) and Kenneth Wild (Wild), appeal from the judgment entered by the district court in their respective cases. In these consolidated appeals, we resolve whether the district court abused its discretion in allowing a juror to take notes during trial and whether the forfeiture of

Wild's house pursuant to 21 U.S.C. § 853(a)(2) violated the Excessive Fines Clause of the Eighth Amendment. For reasons that follow, we affirm the appellants' convictions, but vacate the forfeiture of Wild's house and remand for further proceedings.

## I

This case involved a conspiracy to possess with intent to distribute and to distribute cocaine base (crack) in Arlington, Virginia from early October 1992 until February 1993. Greenfield, the leader of the conspiracy, was the source of crack distributed by others, including Jean Hopkins (Hopkins).[1] Generally, Greenfield broke down larger amounts of crack and was assisted by Hopkins in the cutting, packaging, and distribution of crack.

It was established at trial that Hopkins made her house available to street dealers for the distribution of crack. Sometime in December 1992, Greenfield and Hopkins began to use Wild's house for the distribution and storage of crack. There was no evidence introduced at trial that Wild ever sold or actively participated in the sale of crack; he was a crack addict who received a kickback, in the form of crack, from Greenfield and Hopkins for allowing them to use his house to store and distribute crack. Generally, the transactions at Wild's house occurred at a table in his basement. During the transactions taking place in his basement, sometimes Wild would be present, though not at the table. On other occasions, Wild was given a quantity of crack to smoke in exchange for leaving the basement while Greenfield and Hopkins conducted a drug transaction. Greenfield and Hopkins would also conduct crack transactions in an upstairs bedroom, leaving Wild in the basement.[2]

The evidence of distribution from Wild's house from December 1992 to January 1993 was well established. Calvin Brown testified that he went to Wild's house on two occasions to purchase crack. On the first occasion, Brown purchased $250 worth of crack, and on the second, $500 worth of crack.[3] Henry Cook testified that from mid-December 1992 until January 1993, he went to Wild's house fifteen to twenty times per week to obtain crack.

On March 23, 1993, a Grand Jury sitting in the Eastern District of Virginia returned an eight-count indictment charging Greenfield, Hopkins, and Wild with various violations of federal statutes, including conspiracy to possess with intent to distribute and to distribute fifty grams or more of crack. 21 U.S.C. §§ 841(a)(1) and 846 (count one). Count two of the indictment charged Wild with making a building available for the storing, distributing, and using of crack. 21 U.S.C. § 856(a). Count five charged Greenfield with using a firearm during and in relation to a drug trafficking crime. 18 U.S.C. § 924(c). Count six charged Greenfield with possession of crack with intent to distribute. 21 U.S.C. § 841(a)(1). Count seven charged Greenfield with distribution of crack. *Id.* Pursuant to 21 U.S.C. § 853(a)(2), the indictment contained an *in personam* criminal forfeiture count, which sought the forfeiture of Wild's house.[4]

At trial, the government's evidence consisted of the testimony of government undercover agents, cooperating witnesses, and physical evidence seized from Wild's house during a search on February 25, 1993. Following a three-day trial, Greenfield was found guilty on all counts. Wild was found guilty on count two and not guilty on count one; the jury also returned a special verdict, finding that Wild's house "was used, or intended to

---

1. Hopkins was initially a party to this consolidated appeal, but her motion to withdraw her appeal was granted by the court.

2. There was some confusion at trial as to whether Wild's house had two or more floors. It appears that the house had three floors and perhaps an attic. It also appears that there was no evidence introduced at trial that crack was sold or stored on the main floor of the house or the attic.

3. On four or five occasions, Brown went to Wild's house to sell Wild crack for Wild's personal use.

4. Counts three and four charged Hopkins with distribution of crack, 21 U.S.C. § 841(a)(1), and count eight charged her with possession of crack with intent to distribute. *Id.*

be used, in any manner or part, to commit, or facilitate the commission of the violation charged in Count 2." (R. Doc. No. 20).[5] On June 21, 1993, in accordance with the jury's special verdict, the district court ordered that Wild's house, valued at $180,000,[6] be forfeited.[7]

On July 1, 1993, relying on *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which was decided by the Supreme Court on June 28, 1993, Wild moved to stay the execution of the forfeiture order, asserting that the forfeiture amounted to an excessive fine under the Eighth Amendment. The district court denied the motion, "finding no basis to stay execution of the criminal order of forfeiture." (R. Doc. No. 30). A final decree of forfeiture was entered on September 14, 1993.

Greenfield was sentenced to a term of imprisonment of 420 months, and Wild was sentenced to twenty-one months' imprisonment.[8] The appellants noted a timely appeal.

## II

■ The appellants contend that the district court abused its discretion in permitting a single juror to take notes and, as a result, there exists a strong likelihood that an unjust verdict was reached. At trial, counsel for Greenfield noticed that one juror was taking notes and objected to the juror's taking notes:

> Your Honor, I notice one of the jurors appears to be taking notes. I don't know how Your Honor feels about that but I would object to that because if not all of them are taking notes I would be—it would be my position that the jurors would tend to rely on the person who is [taking notes] during deliberations.

(J.A. 176). The district court then instructed the jury:

5. Hopkins pled guilty on June 2, 1993, to counts three and four of the indictment. She was also found guilty by the jury on count one and not guilty on count eight.

6. The record reflects that there is a lien of $20,000 on the property.

7. We note that the district court's order of forfeiture should have been entered as part of the total

Counsel brought to my attention that one of the jurors is taking notes. That is all right. I caution you about notes, however. The person who has notes in the jury room wields a big stick. The jurors should rely on their own recollection, not somebody else's notes. Indeed, the juror who is taking notes should rely on her recollection, not her notes. I don't mean that you can't take notes. I just think that it is your recollection, not the notes that count.

(J.A. 177).

"Note taking by jurors is a matter of discretion with the district court." *United States v. Polowichak,* 783 F.2d 410, 413 (4th Cir.1986). In *Polowichak,* we cautioned that "if jurors are permitted to take notes, they should be instructed that their notes are not evidence and should not take precedence over the jurors' independent recollections of the proceedings." *Id.* We concluded further that the failure to give jurors an instruction, when none was requested, did not amount to plain error warranting reversal and a new trial. *Id.*

Pursuant to *Polowichak,* it was clearly within the district court's discretion to allow one juror, as well as all of the jurors, to take notes; and the district court gave an appropriate instruction on the use of such notes. Accordingly, the district court did not abuse its discretion in allowing one juror to take notes. *See also United States v. Oppon,* 863 F.2d 141, 148–49 (1st Cir.1988) (district court did not abuse its discretion in allowing one juror to take notes where the district court "advised the juror to be careful not to miss anything" and "instructed the jury on the proper use of notes during deliberations").[9]

## III

■ We turn to Wild's contention that the *in personam* criminal forfeiture of his house

sentence imposed on Wild. *See* 21 U.S.C. § 853(a); Fed.R.Crim.P. 32(b).

8. Hopkins was sentenced to a term of imprisonment of 324 months.

9. In any event, any error here is clearly harmless. *See* Fed.R.Crim.P. 52(a).

pursuant to 21 U.S.C. § 853(a)(2) violated the Excessive Fines Clause of the Eighth Amendment. He requests that we vacate the order of forfeiture and "remand the case to the district court for a hearing to determine whether the forfeiture penalty suffered by [him] is disproportionate to the seriousness of his offense." Appellants' Brief at 31.

The Eighth Amendment provides: "Excessive bail should not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Excessive Fines Clause limits the Government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Austin,* — U.S. at ——, 113 S.Ct. at 2805 (citation and internal quotes omitted); *see also Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 267, 109 S.Ct. 2909, 2916, 106 L.Ed.2d 219 (1989) (noting that Excessive Fines Clause of the Eighth Amendment limits "the ability of the sovereign to use its prosecutorial power, including the power to collect fines, for improper ends").

Recently, in *United States v. Chandler,* 36 F.3d 358 (4th Cir.1994), relying on Justice Scalia's concurrence in *Austin,* this court rejected the notion that proportionality is even a factor to be considered in determining whether an *in rem* forfeiture amounts to an excessive fine under the Eighth Amendment and developed an "instrumentality test" for determining whether a particular *in rem* forfeiture amounts to an excessive fine. *Id.* at 365–66.[10] This court held that to sustain a

forfeiture, a "court must be able to conclude, under the totality of circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense, or would have been, had the offensive conduct been carried out as intended." *Id.* at 365. In making this determination, courts are required to consider three factors under the instrumentality test: "(1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder." *Id.* This court cautioned that no factor is dispositive. *Id.* When examining the first factor, the district court should examine:

(1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spacial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense.

*Id.* Applying this test in *Chandler,* this court concluded that the *in rem* forfeiture of Chandler's thirty-three acre farm did not amount to an excessive fine under the Eighth Amendment. *Id.* at 366.

**10.** The majority in *Austin* did not wholeheartedly endorse Justice Scalia's instrumentality approach:

Justice SCALIA suggests that the sole measure of an *in rem* forfeiture's excessiveness is the relationship between the forfeited property and the offense. See *post,* at 2814–15. We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive.

*Austin,* — U.S. at —— n. 15, 113 S.Ct. at 2812 n. 15. We also recognize that *Chandler's* conclusion that proportionality is not to be considered in determining whether an *in rem* forfeiture amounts to an excessive fine stands alone among the circuits, *see United States v. Real Property at 9638 Chicago Heights, St. Louis,* 27 F.3d 327, 331

(8th Cir.1994) (district court erred in relying on Justice Scalia's concurrence to reject excessiveness challenge; district court, among other things, "did not consider the monetary value of the property ... [and] the fact that the property was a residence"); *United States v. Premises Known as RR # 1,* 14 F.3d 864, 874–75 (3d Cir.1994) (adopting proportionality test in *in rem* forfeitures), and could be viewed as inconsistent with our decision in *United States v. Borromeo,* 1 F.3d 219, 221 (4th Cir.1993) (Remanding *in rem* forfeiture of a building to the district court with instructions to conduct "an inquiry into the proportionality between the value of the instrumentality sought to be forfeited and the amount needed to effectuate the legitimate remedial purposes of the forfeiture"). Because we are distinguishing *Chandler,* this inconsistency, if any, need not be addressed.

In this case, the government urges us to follow *Chandler* and hold that the *in personam* criminal forfeiture of Wild's house pursuant to 21 U.S.C. § 853(a)(2) does not amount to an excessive fine. Wild, while not agreeing with *Chandler*, attempts to distinguish it on the basis that this case is not an *in rem* forfeiture case, but rather an *in personam* criminal forfeiture case. With this distinction in mind, Wild posits that the value of the property subject to forfeiture is a factor in determining whether an *in personam* criminal forfeiture is excessive, and his position has support. *See, e.g., United States v. Libretti*, 38 F.3d 523, 531 (10th Cir.1994) (in determining whether an *in personam* criminal forfeiture is excessive, "courts must consider all factors"); *United States v. Alexander*, 32 F.3d 1231, 1236 (8th Cir.1994) (in assessing excessiveness of *in personam* criminal forfeiture, court must consider, among other things, "the extent of the criminal activity and the quantum of property forfeited"); *United States v. Sarbello*, 985 F.2d 716, 724 (3d Cir.1993) (excessiveness inquiry in *in personam* criminal forfeitures requires the value of the property to be considered). We agree with Wild that, because this case involves an *in personam* criminal forfeiture pursuant to 21 U.S.C. § 853(a)(2), *Chandler* does not control the disposition of this case and the value of the property being forfeited is a factor to be considered in determining whether an *in personam* criminal forfeiture pursuant to 21 U.S.C. § 853(a)(2) constitutes an excessive fine.

An *in personam* criminal forfeiture is an action against the person as distinguished from an *in rem* forfeiture which is an action against the property itself. In *in personam* criminal forfeitures, the person not the property is guilty of some offense. Here, the *in personam* criminal forfeiture sought by the government arises by virtue of the commission of an offense covered by 21 U.S.C. § 853(a) and the fact that the property was "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of," a violation covered by 21 U.S.C. § 853(a). 21 U.S.C. § 853(a)(2). The property is neither charged with nor convicted of an offense. The Supreme Court has explained, in *Alexander v. United States*, —— U.S. ——, ——–——, 113 S.Ct. 2766, 2775–76, 125 L.Ed.2d 441 (1993), that *in personam* criminal forfeitures are "clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional 'fine.'" And "at the time of the drafting and ratification of the [Eighth] Amendment, the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *Browning–Ferris Indus.*, 492 U.S. at 265, 109 S.Ct. at 2915. Because an *in personam* criminal forfeiture is a form of monetary punishment assessed against a criminal defendant for the commission of some offense, it is clear that the excessiveness inquiry should focus, at least in part, on the value of the property being forfeited, *i.e.*, the amount of the fine. In other words, if an *in personam* criminal forfeiture is a fine, it follows that to determine whether the fine is "excessive," the amount of the fine, *i.e.*, the value of the property being forfeited, must by necessity be considered.[11]

We cannot accept the government's invitation to apply *Chandler* to this case for several reasons. First, to do so would ignore the Supreme Court's admonition in *Alexander* that *in personam* criminal forfeitures are the equivalent of monetary punishments assessed against criminal defendants for the commission of some offense. Second, even Justice Scalia's concurrence in *Austin*, which this court so heavily relied upon in *Chandler*, noted that the *in rem* excessiveness inquiry differs from the inquiry applied to cases of monetary fines and *in personam* criminal forfeitures because *in rem* civil forfeitures do not concern: "the appropriate value of the penalty in relation to the committed offense,

---

11. Of course, the forfeiture of property neither constituting, nor derived from, proceeds of an illegal activity must be distinguished from the forfeiture of property constituting, or derived from, proceeds of an illegal activity. The former is clearly a form of punishment; the latter is not, and thus, is not covered by the Excessive Fines Clause of the Eighth Amendment. *See Austin*,

—— U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14 ("[A] fine that serves purely remedial purposes cannot be considered 'excessive' in any event."); *United States v. Alexander*, 32 F.3d at 1236 ("Forfeiture of proceeds cannot be considered punishment, and thus, subject to the excessive fines clause, as it simply parts the owner from the fruits of the criminal activity.").

but [rather] ... what property has been 'tainted' by unlawful use, to which issue the value of the property is irrelevant." *Austin*, — U.S. at —, 113 S.Ct. at 2815 (Scalia, J., concurring in part and concurring in the judgment).[12]

Having reached the conclusion that the value of the property is an indispensable factor to be considered in an *in personam* criminal forfeiture, we are hesitant, in light of the dearth of Supreme Court guidance in this area, to formulate a bright-line test governing whether a particular *in personam* criminal forfeiture amounts to an excessive fine under the Eighth Amendment. Indeed, in *Alexander*, the Court neither set forth a test nor delineated factors that a court should consider in an *in personam* criminal forfeiture excessiveness inquiry. The Court did state, however, that the extent and duration of a defendant's criminal activities should be considered. *Alexander*, — U.S. at —, 113 S.Ct. at 2776. ("It is in light of the extensive criminal activities which petitioner apparently conducted through this racketeering enterprise over a substantial period of time that the question of whether or not the forfeiture was 'excessive' must be considered.").

■ Despite this lack of guidance, we believe we can set forth a general principle to guide district courts in resolving excessiveness challenges to *in personam* criminal forfeitures pursuant to 21 U.S.C. § 853(a). Section 853(a) provides:

(a) Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

Section 853(a) thus permits the *in personam* criminal forfeiture of property in three distinct situations.[13] The first is "property constituting, or derived from, any proceeds the person obtained ... as the result" of the violation covered by 21 U.S.C. § 853(a). 21 U.S.C. § 853(a)(1). The second is property "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" an offense covered by § 853(a). 21 U.S.C. § 853(a)(2). The third pertains to a

---

12. While it is true that proportionality review is traditionally associated with the Cruel and Unusual Punishment Clause of the Eighth Amendment, *see, e.g., Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), proportionality review is not limited to that clause. Indeed, the Supreme Court in *Alexander* rejected this argument. In *Alexander*, the defendant argued that the *in personam* criminal forfeiture order (in addition to his six-year sentence and $100,000 fine) was disproportionate to the gravity of his offenses and therefore violative of either the Cruel and Unusual Punishment Clause or the Excessive Fines Clause. *Alexander*, — U.S. at —, 113 S.Ct. at 2775. The court of appeals rejected Alexander's argument, holding that proportionality review is not required when the sentence is less than life imprisonment without parole. *Id.* The Supreme Court did not take issue with the holding of the court of appeals as it related to Alexander's cruel and unusual pun-

ishment argument, but rejected the holding as it applied to his argument under the Excessive Fines Clause. *Id.* The Court explained that the proposition that proportionality review is not required when the sentence is less than life imprisonment without parole "has relevance only to the Eighth Amendment's prohibition against cruel and unusual punishments." *Id.* The Court went on to state that the *in personam* criminal forfeiture at issue should be analyzed under the Excessive Fines Clause. *Id.* at —, 113 S.Ct. at 2775–76.

13. Section 853(b) defines the property subject to forfeiture under § 853(a) to include:

(1) real property, including things growing on, affixed to, and found in land; and
(2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

defendant who is convicted of engaging in a continuing criminal enterprise. 21 U.S.C. § 853(a)(3). In that instance, in addition to property forfeited under 21 U.S.C. §§ 853(a)(2) and (3), the defendant shall forfeit "any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise." An excessiveness challenge can never be mounted against an *in personam* criminal forfeiture pursuant to 21 U.S.C. § 853(a)(1) because the forfeiture of property constituting, or derived from, proceeds of an illegal activity can never be "excessive" in a constitutional sense. *See Austin,* —— U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14 ("[A] fine that serves purely remedial purposes cannot be considered 'excessive' in any event."); *see also United States v. Alexander,* 32 F.3d at 1236 ("Forfeiture of proceeds cannot be considered punishment, and thus, subject to the excessive fines clause, as it simply parts the owner from the fruits of the criminal activity."). On the other hand, *in personam* criminal forfeitures pursuant to 21 U.S.C. §§ 853(a)(2) and (3), which operate on the premise that the property being forfeited was obtained independent of any illegal activity, are subject to an excessiveness inquiry. That inquiry essentially asks whether the value of the property being forfeited is an excessive monetary punishment in relation to the offense giving rise to the forfeiture. In other words, the excessiveness inquiry turns on whether the government can exact a fine in the amount of the forfeiture in light of the defendant's conduct and the offense committed. This inquiry beckons a comparison of the value of the property being forfeited to the gravity of the offense committed by the defendant and the nature and extent of the defendant's activities. In our view, only in rare situations will an *in personam* criminal forfeiture pursuant to 21 U.S.C. § 853(a)(2) be excessive in a constitutional sense, and only in exceedingly rare situations will an *in personam* criminal forfeiture of property pursuant to 21 U.S.C. § 853(a)(3) be disturbed.

In resolving the excessiveness issue, a district court, in its discretion, may choose to hear additional evidence. Along a similar vein, to assist appellate review, a district court should make clear its findings and reasoning supporting its resolution of the excessiveness issue.

In this case, the district court neither made findings nor set forth its reasoning for rejecting Wild's challenge to the *in personam* criminal forfeiture on excessiveness grounds. While it is true that this court applied the instrumentality test to the record before it in *Chandler,* we believe that, in this case, it is more appropriate to allow the district court to conduct the fact-intensive excessiveness inquiry in the first instance. *Alexander,* —— U.S. at ——, 113 S.Ct. at 2776 (remanding for excessiveness analysis); *Austin,* —— U.S. at ——, 113 S.Ct. at 2812 (lower court should consider in first instance whether "forfeiture is constitutionally 'excessive'"). Accordingly, we will vacate the forfeiture order and remand the case to the district court for further proceedings.

## IV

For the reasons stated herein, we affirm the appellants' convictions, but vacate the forfeiture of Wild's house and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.*