UNITED STATES of America, Plaintiff,

v.

Pierre Gilles DOYER, Defendant.

No. 90–14–CR–FTM–17.

United States District Court,
M.D. Florida,
Fort Myers Division.

Nov. 22, 1995.

Howard Freidin, Law Office of Howard Freidin, Fort Myers, FL, Melvin S. Black, Melvin S. Black, P.A., Miami, FL, for Pierre Gilles Doyer.

Susan M. Daltuva, U.S. Attorney's Office, Middle District of Florida, Ft. Myers, FL, for U.S.

## *ORDER*

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's Dispositive Motion to Bar Prosecution as in Violation of the Double Jeopardy Clause of the Fifth Amendment and Incorporated Memorandum of Law (Docket No. 849); Government's Response to Defendant's Motion to Bar Prosecution as in Violation of the Double Jeopardy Clause of the Fifth Amendment and Incorporated Memorandum (Docket No. 874); and Defendant's Reply to Government Response Regarding Double Jeopardy.

## BACKGROUND FACTS

Defendant, Pierre Gilles Doyer was indicted on January 31, 1990, along with twenty-eight (28) co-defendants. The indictment alleges that from February 1985 through January 1990, Defendant Doyer operated a broad marijuana smuggling and distribution conspiracy, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841, 846, 848, and 952. Doyer is named in all fifteen (15) counts of the indictment, including a forfeiture count under 21 U.S.C. § 853.

The indictment was sealed so that simultaneous arrests, search warrants, and property seizures could take place both in the United States and Canada. Pierre Doyer and numerous other co-conspirators were arrested on May 30, 1990, in Montreal, Quebec, Canada, in a coordinated effort by law enforcement officers both in the United States and Canada. Defendant Doyer was arrested in Canada and, until recently, was contesting extradition from Canada. Doyer was in custody in Canadian jails from December 17, 1990, until his extradition to the United States on August 14, 1995 and is now before this Court facing the fifteen (15) criminal charges in the Indictment.

Twelve (12) days after the indictment was unsealed, a civil proceeding was filed against Doyer's fifty-five (55) foot "Chinese Junk", the "Lotus" on June 11, 1990, in the civil division of the Middle District of Florida (Case No. 90–164–CIV–FTM–98D). The complaint alleged both that the vessel was derived from drug proceeds and used to facilitate illegal controlled substance activity. Therefore, it was subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Defendant filed a claim of ownership in April of 1991; however, he failed to file an answer to the complaint of forfeiture and a default judgment was entered against the vessel. It eventually sold for approximately $49,999.00.

On July 3, 1990, a little over a month after the indictment was unsealed, a second coordinated civil forfeiture case was filed against Doyer's interest in a purchase money mortgage for real property located at 8100 Canterbury Circle, Seminole, Florida (Case No. 90–828–CIV–T–17A). Again, the complaint alleged that the property was both proceeds of and facilitated the illegal activity of Defendant and was therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). The government subsequently filed a Bill of Particulars incorporating the property into the criminal forfeiture count of the Indictment. On April 15, 1991, Defendant filed a document claiming to be the owner of the property, but again failed to file an answer to the civil complaint and a default judgment was entered. The government received approximately $124,583.30 from the sale of the property.

A thirty-eight (38) foot sailboat was forfeited administratively by the United States Customs Service. The vessel was turned over to the government as part of a plea agreement with a co-conspirator to whom the boat had apparently been given. No claim was made by Defendant Doyer and the government contends that Doyer disassociated himself from this vessel. As a result the government contends that the "Lotus" and the Canterbury property are the only forfeitures at issue here. Defendant's Reply does

not contest this assertion and therefore the Court will not address the forfeiture of the sailboat.[1]

## DISCUSSION

■ The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). It is under the third category that Defendant brings his motion to bar prosecution.

■ Viewing the Double Jeopardy argument in the context of civil forfeiture and criminal prosecution, Double Jeopardy would preclude a subsequent proceeding if there were: (1) a punishment, (2) based on the same offense, (3) in a separate legal proceeding, and (4) in which jeopardy has already attached. *United States v. Dixon,* —— U.S. ——, ——, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993).

The government presents many arguments against Defendant's contention that jeopardy has attached in this case. The Court, while recognizing that there may be merit each of the arguments put forth, will limit its discussion to three (3) areas that are clearly dispositive of the Double Jeopardy issue.

Foremost in the Court's opinion is that there is no "punishment" involved in the forfeiture of the "Lotus" and the Canterbury property. Secondly, according to binding precedent in the Eleventh Circuit Court of Appeals, the civil and criminal proceedings in this case constitute one coordinated proceeding for Double Jeopardy purposes. Finally, jeopardy did not attach in the civil forfeiture proceeding because the prior civil judgments were entered by default.

## I. No "Punishment" within the meaning of the Double Jeopardy Clause.

The issue of whether civil forfeiture constitutes "punishment" is the subject of consider-

---

1. Consideration of the forfeiture of the sailboat would do virtually nothing regarding the double jeopardy analysis in this case.

able debate following the Supreme Court decisions in *Halper, Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *Department of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

 In *Halper*, the underlying crime involved a fraud against the government that amounted to $535.00 in actual damages. The federal civil claim for the fraud, however, exceeded $130,000.00. The Supreme Court held that where a civil sanction is no longer considered solely remedial and can only be explained as serving either a retributive or deterrent purpose, it is "punishment" within the meaning of the Double Jeopardy Clause. *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902. "Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goal of punishment." *Id.* 490 U.S. at 446–48, 109 S.Ct. at 1901–02. Thus, it is the character of the sanction that determines whether the sanction imposed is remedial or punitive in the criminal sense. *Id.* at 446, 109 S.Ct. at 1901. "It is the purpose actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Id.* at 447 n. 7, 109 S.Ct. at 1901 n. 7.

In respect to the Eighth Amendment's Excessive Fines Clause, the *Austin* Court held that civil forfeiture *in rem* pursuant to 21 U.S.C. §§ 881(a)(4) and (a)(7) constitutes punishment. *Austin*, —— U.S. at —— ——, 113 S.Ct. at 2811–2812. The *Austin* Court concluded that even assuming civil forfeiture under these provisions serves some remedial purpose, it must necessarily also serve a retributive or deterrent purpose and in so doing, must constitute punishment. *Id.* at ——, 113 S.Ct. at 2812. It is therefore subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Id.* at ——, 113 S.Ct. at 2812. Though not directly addressing the Fifth Amendment Double Jeopardy issue, the Court's "punishment" discussion appears largely responsible for the disparate approaches in Double Jeopardy analysis among the Circuit Courts of Appeal.

 Finally, *Kurth Ranch* involved four (4) different proceedings: a criminal case involving conspiracy to possess drugs with the intent to sell, a civil forfeiture action seeking recovery of cash and equipment used in the marijuana operation, a tax proceeding that involved the assessment of a tax on dangerous drugs, and a bankruptcy proceeding. The Supreme Court, addressing only the tax proceeding as a Double Jeopardy issue, held that a state imposed tax on confiscated and subsequently destroyed drugs constituted punishment when it is characterized by a high tax rate and deterrent purpose, is conditioned on the commission of a crime, and is levied on goods the taxpayer neither owns nor possesses when the tax is imposed. *Kurth Ranch*, —— U.S. at —— —— ——, 114 S.Ct. at 1947–48. Accordingly, a civil sanction in the form of a tax may constitute a second punishment within the contemplation of the Double Jeopardy Clause. *Id.*

The result of these three (3) Supreme Court cases is a split in the Circuit Courts of Appeal on the proper approach to Double Jeopardy analysis when addressing cases involving civil forfeiture of drug proceeds pursuant to § 881(a)(6).

The Ninth Circuit has held that the Supreme Court's decision in *Austin* compels a finding that civil forfeiture pursuant to § 881(a)(6) constitutes punishment. *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1221 (9th Cir.1994), *amended* and *rehearing denied*, 56 F.3d 41 (1995). That court found that the Supreme Court's civil forfeiture analysis under the Eighth Amendment's Excessive Fines Clause in *Austin* is equally applicable to the Fifth Amendment's Double Jeopardy Clause. The Ninth Circuit determined that the principles established in *Austin* dictate a finding that any civil forfeiture pursuant to § 881(a), regardless of the subsection, or reason that the forfeiture action is brought, operates at least in part to punish and deter. *$405,089.23 U.S. Currency*, 33 F.3d at 1221. Therefore, any civil forfeiture brought in the Ninth Circuit in a separate proceeding from the criminal prosecution, works to bar any subsequent criminal prosecution on the grounds of Double Jeopardy.

The Fifth Circuit, on the other hand, found a much more limited applicability of the Supreme Court cases in its opinion in *U.S. v. Tilley*, 18 F.3d 295 (5th Cir.1994). That court held the appropriate test to be as follows:

> Under Halper, we must classify the civil forfeiture of the unlawful proceeds of illegal drug sales under § 881(a)(6) as a punishment under the Double Jeopardy Clause if, in this particular case, the amount of the proceeds forfeited was so great that it bore no rational relation to the costs incurred by the government and society resulting from the defendant's criminal conduct.

*Tilley*, 18 F.3d at 299.

More important than the rational relation test utilized by the *Tilley* court is its finding that the forfeiture of proceeds from illegal drug sales does not constitute punishment. Specifically, the court explained:

> The forfeiture of . . . illegal proceeds does not punish the defendant because it exacts no price in liberty or lawfully derived property from him. The possessor of proceeds from illegal drug sales never invested honest labor or other lawfully derived property to obtain the subsequently forfeited proceeds. Consequently, he has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their genesis in illegal activity.... In short, the wrongdoer has nothing, at least nothing to which the law entitles him, to lose from the possible confiscation of the proceeds from his criminal trade. Thus, we believe the forfeiture of proceeds from illegal drug sales is more closely akin to the seizure of the proceeds from the robbery of a federal bank than the seizure of lawfully derived real property.

*Id.* at 300.

■ This Court fully embraces the analysis of the Fifth Circuit regarding the forfeiture of drug proceeds. It is clear when comparing *$405,089.23 U.S. Currency* with *Tilley*, that the Ninth Circuit failed to fully consider the crucial, initial determination of whether the property to be forfeited ever lawfully belonged to the defendant in the first instance. This determination must be made before any analysis of punishment within the meaning of the Double Jeopardy Clause could plausibly begin. By way of analogy, the long standing maxim of commercial law, *nemo dat qui non habet* (he who hath not cannot give), also guides this common sense approach. The government cannot take, and thereby punish, what an individual defendant does not legally have.

The Court's finding that the forfeiture of illegal drug proceeds pursuant to § 881(a)(6) is remedial is supported by the case law of other circuits as well. See *United States v. Wild*, 47 F.3d 669, 674 n. 11 (4th Cir.1995) (forfeiture of illegal drug proceeds, in contrast to forfeiture of property neither constituting nor derived from proceeds off an illegal activity, is not punishment covered by the Eighth Amendment's Excessive Fines Clause); *United States v. $21,282.00 in U.S. Currency*, 47 F.3d 972, 973 (8th Cir.1995) (forfeiture of proceeds of criminal activity which "simply parts the owner from the fruits of the criminal activity" does not constitute punishment under the Eighth Amendment) (citation omitted); *S.E.C. v. Bilzerian*, 29 F.3d 689, 696 (D.C.Cir.1994) (disgorgement order is remedial and not punishment within the meaning of Fifth Amendment's Double Jeopardy Clause because it did not ask defendant to give up anything in excess of the amount of his illicit gains).

■ Defendant in this case forfeited property to the government that was proceeds of the illegal drug trade pursuant to 21 U.S.C. § 881(a)(6). The forfeiture of those proceeds was entirely remedial and not punitive within the meaning of the Double Jeopardy Clause. Therefore, Defendant's Motion to Bar Prosecution is properly denied on this basis alone.

## II. One proceeding for Double Jeopardy Purposes.

■ This Court must follow the binding precedent set forth by the Eleventh Circuit in *U.S. v. One Single Family Residence*, 13 F.3d 1493 (11th Cir.1994). When the government simultaneously pursues criminal and civil sanctions against a defendant for the same conduct, the two proceedings constitute

a single coordinated prosecution. *One Single Family Residence,* 13 F.3d at 1499. Where civil and criminal actions are pursued contemporaneously, there is no concern, as expressed in *Halper,* that the government might act abusively by seeking a second punishment when it is dissatisfied with the punishment levied in the first action. *Id.* at 1499.

■ In this case, the government instituted the civil proceedings against the "Lotus" only twelve (12) days after the criminal indictment was unsealed and the complaint against the Canterbury property was filed within a month thereafter. The government then simultaneously pursued both the criminal and civil actions against the defendant. Simply because the civil proceedings ended first does not mean the two (2) proceedings were separate. On the contrary, this Court finds that the three (3) proceedings, two (2) civil and one criminal, are separate prongs of a single, coordinated prosecution as defined by the Eleventh Circuit. As such, the upcoming criminal prosecution does not offend the Double Jeopardy Clause.

### III. Jeopardy did not attach to the civil judgments entered by default.

■ Jeopardy attaches in a civil forfeiture proceeding when evidence is first presented to the trier of fact. *United States v. Torres,* 28 F.3d 1463, 1465 (7th Cir.1994) (citing *Crist v. Bretz,* 437 U.S. 28, 32–36, 98 S.Ct. 2156, 2158–59, 57 L.Ed.2d 24 (1978)), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). Jeopardy does not attach when the defendant does not make a claim and thus, does not become a party to the forfeiture. *Id.* Further, there is no jeopardy when there is no trial and the property sought to be forfeited is in fact forfeited without opposition. *Id.*

■ Default judgments were entered in both civil actions that form the basis for Defendant's petition to bar prosecution. Those default judgments were entered because Defendant chose to remain in Canada to fight extradition to this country and, voluntarily chose not to defend the civil actions. Accordingly, no jeopardy attached to those proceedings because Defendant was not at

risk and " 'without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitute double jeopardy.' " *Id.* at 1465 (citing *Serfass v. U.S.,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975)). Defendant made his choice to stay in Canada and fight extradition. Prosecution for the underlying offense has been delayed five (5) years and now Defendant attempts to utilize this conscious choice to evade the jurisdiction of this Court to further insulate himself from prosecution. Since jeopardy never attached to the civil actions in which default was entered, the upcoming criminal prosecution is not barred by the Double Jeopardy Clause.

### CONCLUSION

For the foregoing reasons the Court denies Defendant's Motion to Bar Prosecution as in Violation of the Double Jeopardy Clause of the Fifth Amendment. Thus, the Court has determined that Pierre Gilles Doyer shall, for the offenses listed in the Government's Indictment against him, proceed to trial and be put in jeopardy of life and limb for the first and only time within the meaning of the Double Jeopardy Clause of the Fifth Amendment, on the 27th day of November, 1995, or as otherwise set by the trial judge. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Dispositive Motion to Bar Prosecution as in Violation of the Double Jeopardy Clause of the Fifth Amendment (Docket No. 849) **BE DENIED.**

**DONE AND ORDERED.**